IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DELORIS BURROUGHS, | } |
| Plaintiff, | } |
| v. | } CIVIL ACTION NO. |
| | } 01-AR-1863-M |
| BELLSOUTH TELECOMMUNICATIONS, INC., et al., | } |
| Defendants. | } |

**MEMORANDUM OPINION**

This case was brought five years ago by Deloris Burroughs ("Burroughs") against her former employer, BellSouth Telecommunications, Inc. ("BST"), and another defendant called "Long Term Disability Plan for Salaried Employees", which was nothing but BST, the plan sponsor by another name. She invoked 29 U.S.C. § 1132, the enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), and claimed that she had been wrongfully denied long-term disability ("LTD") benefits.

At a much earlier juncture in the case, the undersigned, to whom the case was at that time randomly reassigned from the magistrate judge to whom the case was originally assigned, considered the then report and recommendation of the magistrate judge on the then pending cross-motions for summary judgment, and withheld a dispositive ruling. Instead, the court ordered the claim remanded or resubmitted, not to the magistrate judge, but

to BST for its reconsideration in light of evidence not in the administrative record, some of which had been lost and was not considered either by BST or by the magistrate judge. After a prolonged reconsideration, BST, speaking through a new "claims administrator", Broadspire, Inc. ("Broadspire"), instead of through BellSouth Telecommunications Employees Benefit Claim Committee ("EBCRC"), BST's earlier *alter ego* that had first denied Burroughs's LTD benefits claim, again denied it.

After considering renewed cross-motions for summary judgment supported by boxes of evidentiary materials and briefs, the magistrate judge has again recommended the denial of Burroughs's motion for summary judgment and the granting of BST's motion.[1] Neither Broadspire nor EBCRC is, or ever has been, a defendant. BST has never contended that either of these entities is a necessary party, thus conceding that BST is the only party legally responsible to LTD beneficiaries for making decisions

---

[1] The court accorded no deference to the advice given this court by a hard working and highly competent magistrate judge on how to decide these cross-motions. Rule 72(b), F.R.Civ.P., provides that upon objection to a magistrate judge's report and recommendation, the district court must "make a *de novo* determination". This rule is difficult, if not impossible, to apply in the procedural context of this ERISA benefits case in which the magistrate judge was dealing with Rule 56, F.R.Civ.P., but could not make findings of ultimate fact on what he believed to be the undisputed material facts. By the terms of the general order of reference adopted by this court on May 8, 1998, under the authority of 28 U.S.C. § 636, every sixth civil case (with certain excepted categories) is assigned to a magistrate judge who is thereafter not only responsible for ruling on non-dispositive motions, but, if the parties consent to full jurisdiction in him, for making dispositive rulings and conducting a trial. When this case was filed, it was, pursuant to the general order, randomly assigned to a magistrate judge, whose jurisdiction was never expanded to include dispositive rulings.

under its LTD plan, and therefore that both EBCRC and Broadspire were nothing more than the authorized agents of BST. This is equally true of BST's only named co-defendant, Long Term Disability Plan for Salaried Employees, which, if it exists as a juridical entity, has rightly been ignored.

Burroughs timely objected to the report and recommendation, automatically forcing upon this court the absolute obligation to evaluate the parties' cross-motions for summary judgment anew, as if they had never been considered by the magistrate judge.[2]

---

[2] A so-called "review" of the magistrate judge's report and recommendation under Rule 72(b), properly understood, despite the amount of time and effort the magistrate judge put into the case, is conducted without any deference whatsoever being given to his recommendation. It is as if he had never touched the file, much less slaved over it. In this court's humble opinion, Rule 72(b), complicated by this court's general order of May 8, 1998, sets up a poor utilization of our magistrate judges' time and abilities, that is, if the "reviewing" judge takes Rule 72(b) seriously. If the district judge simply rubber stamps the magistrate judge, Rule 72(b) is violated. The district judge must start from scratch, treating the magistrate judge's recommendation as no more than a law clerk's draft. The word "review" in this context is a misnomer.

In view of Rule 72(b), this court will not undertake to critique the magistrate judge's recommendation, even though this court disagrees with it. A law clerk's proposed opinion sometimes, with little or no editing, becomes the opinion of the court. In this instance, however, upon a serious *de novo* consideration of these particular cross-motions for summary judgment and the materials supporting and opposing them, the court arrives at a conclusion different from that recommended by the magistrate judge.

Even mentioning the fact that the case was assigned to a magistrate judge in the first instance was unnecessary to this opinion. This court could have limited its opinion to its own separate and independent view of the cross-motions for summary judgment, without any reference whatsoever to Rule 72(b). The court would have done so but for the opportunity the case provides for voicing this court's disagreement with the local procedural rule that invites a misuse of judicial resources and therefore, that should be amended to reassign automatically a case from a magistrate judge to a district judge the moment a motion for summary judgment is filed unless full jurisdiction has been conferred on the magistrate judge.

**<u>Standard of Review</u>**

It does not follow from the fact that the standard of "review" of the magistrate judge's proposed ruling is *de novo* that the standard of review of BST's denial of benefits is *de novo*. Assuming *arguendo* that Burroughs's claim is to be evaluated *de novo* by the court, who is called upon to understand the pertinent terms of the LTD plan and who must consider and weigh the medical evidence bearing on Burroughs's claim of disability, and further assuming *arguendo* that the burden of proof is on Burroughs, this court concludes, contrary to the conclusion proposed by the magistrate judge, that Burroughs is entitled to LTD benefits. The court's rationale for its conclusion will appear from the subsequent discussion, which starts with this court's expression of doubt that Burroughs's claim is to be examined exactly *de novo*, as the term "*de novo*" is usually understood.

The nuances of judicial review of ERISA decisions are myriad. The approach to such judicial review is still evolving, often in different directions. To start with, it is undeniable that BST has given itself the broadest possible grant of ERISA discretion conceivable, taking the fullest advantage of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989). The words by which BST was granted discretion are more elaborate than, but just as airtight as, those suggested by Judge Posner in

*Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 331 (7th Cir. 2000), namely: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them".

In *Bruch* the Supreme Court established the still controversial idea that an ERISA plan document can give discretion to an ERISA fiduciary both to interpret the plan and to rule on the merits of a particular claim, and thereby render the fiduciary's decision invulnerable to judicial review except upon a finding by a court that the fiduciary abused his discretion.  Although, in theory, the plan document is thought of as a contract between the employer (the plan sponsor) and the employee, it never is truly the product of arms-length negotiation between the settlor and the *cestui que trust*.  The employee has no say-so in fashioning the coverage or the claims procedure.  Yet, the beneficiary is deemed to have granted to his ERISA trustee the right to be less than loyal to him.  In actuality, the funding party, whether an insurance company or a self-insured employer, is always self-interested.  That self-interest is absorbed by, or is adopted by, the agents and claims administrators of the sponsor.  Their loyalty is to the party who pays them.  When the ominous words "cost containment" were first revealed as the fiduciary watchwords during the *UNUM/Provident* scandal, the search was on for an ERISA decision-maker who could

pass muster as non-conflicted and who had no reason whatsoever to refuse a claim in order to "contain costs". If any such entities have been found, their names have not been made public. The only such entity this court can imagine is a theoretical claims decider, perched somewhere in an ivory tower, selected by majority vote of his ERISA plan beneficiaries and paid by them. When such an imaginary fiduciary grants a claim, he would pay it out of a fund that is incontrovertibly inexhaustible, so that, by actuarial expectation, every potential claim could be paid without any need to replenish the fund. Implicitly recognizing this problem (although, in the opinion of this court, not the seriousness of it), the Supreme Court in *Bruch* set up a sliding scale of deference to be accorded a decision-maker who has been given broad discretion, but who has a conflict-of-interest. This innovation articulated by the *Bruch* majority included the idea that the degree of deference slides with the degree of the decision-maker's self-interest. In other words, the decision of that hard-to-imagine, wholly-impartial, fair-minded, disinterested, objective decision-maker, can be set aside by a court only if the decision is found to have been arbitrary and capricious, whereas the decision of the invariably conflicted decision-maker is given **whatever deference it deserves**. In light of *Bruch*, two questions come to mind. Answers to both questions may be necessary to a decision of this case. First, who decides

what deference, if any, BST's denial decision deserves?  Second, if the answer to the first question is "the court", what degree of deference does this court find that BST's decision deserves?

In *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991), the Eleventh Circuit parted ways with those courts who, after *Bruch*, began routinely to affirm benefits denial decisions by ERISA plan fiduciaries if they had been granted *Bruch* discretion, no matter how conflicted the fiduciary might actually be.  Many courts simply turned a blind eye to obviously self-interested decision-making.  One such escape from reality was to find that the decision was not really that of the self-interested plan sponsor but that of an "independent", outside claims administrator.  Like many others, BST has in the past employed this defensive device.  *See Carter v. BellSouth Telecommunications, Inc.*, 345 F. Supp. 2d 1296 (N.D. Ala. 2004).

In *Brown*, the Eleventh Circuit acknowledged *Bruch*'s sliding scale of deference, but held that even though a denial decision may have been within the range of reasonableness, "**[t]he fiduciary . . . should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment**". (emphasis supplied).  898 F.2d at 1568.  This pointed proposition remains the law of the Eleventh Circuit.  No subsequent Eleventh Circuit decision has repudiated it or

7

subtracted from it.  This court is bound by what the Eleventh Circuit said and is obligated to give it meaning and purpose.  To give the above-quoted and emphasized language real meaning, it is necessary first to decide if BST's decision here was tainted by self-interest, and, if it was, what deference, if any, to give it.  This involves an examination of the **reasonableness** not only of BST's denial, but the **reasonableness** of Burroughs's claim.  *Brown* created the reverse side of the "is it reasonable?" coin when the decision of the claims administrator is tainted.

Examining the record created during the agonizing processing of Burroughs's claim within the BST chain-of-command, this court finds no evidence by which BST can honestly argue that it has proven by a preponderance of the evidence that its denial decision was not tainted by self-interest.  This court cannot even detect this argument from BST in this case.  It was the central defense in *Carter*.  The possibility that BST, through its agents, honestly believed that Burroughs could perform adequately in a workplace setting has received careful consideration by the court.  If BST sincerely holds such a belief, it is guilty of self-delusion.

In *Brown*, the Eleventh Circuit was doing nothing but accommodating to reality.  It was recognizing the obvious, namely, that in the **real** world of ERISA decision-making, the deciders are **always** affected by self-interest.  Some decision-

makers may be more obvious than others in revealing, by how they go about arriving at their decision, their conflict-of-interest. In this case, BST and its various *alter egos* have demonstrated an aggressiveness that compares favorably with the "cost containment" attitude of other ERISA fiduciaries this court has run into or heard about.  As stated above, BST does not pretend, as it did in *Carter*, that it has no financial stake in the denial of Burroughs's claim.  Because it cannot mount a defense based on the absence of self-interest, and because it is at the outer edge of conflicted decision-makers, there was no need in this case to allow Burroughs discovery designed to explore the **degree** of BST's self-interest, as was allowed in *Harris v. J.B. Hunt Transport, Inc.*, 423 F. Supp. 2d 595 (E.D. Tex. 2005).

In *Carter*, which, in combination with this opinion, might erroneously lead a reader to conclude that this court is more judgmental of BST than it is of other ERISA plan sponsors under the same or similar circumstances, this court was faced with BST's attempt to disassociate itself from any ERISA decision-making responsibility.  Although this court's opinion in *Carter* was subsequently vacated on the joint motion of the parties as part of a settlement reached during the pendency of BST's appeal to the Eleventh Circuit, this court does not retreat from its belief announced in *Carter* that no matter what other entities may have contributed to BST's denial decision (and had been

interposed by BST as allegedly disinterested insulators), BST was **the** decision-maker, and it was operating under a conflict-of-interest.  In *Carter*, the court was not taking aim only at BST, and is not taking aim at BST now.  This court is an equal opportunity critic of ERISA decision-making.[3]  The court cannot resist noting the possibility that BST settled with Mr. Carter for fear that the Eleventh Circuit might agree with this court's understanding of *Brown*.

If the **degree** of deference to be accorded BST's decision is a matter that must be determined under the *Bruch* rubric, there is nobody but this court to do it.  The court has looked for opinions by other courts to see if any court has actually fixed a numerical degree of deference to be given a conflicted fiduciary (such as 50 on a scale of 100), but has found none.  BST's conflict-of-interest was and is so glaring and so overwhelming that it pervaded and corrupted its decision.  On a scale of 1 to 100, the degree of deference due BST's decision is zero.  This court reaches this conclusion not only to be consistent with its *Carter* rationale, but because what it said in *Carter* fits virtually all ERISA decision-makers.  A few ERISA decision-makers may more successfully disguise their self-interest than BST did, but this court would not know how to go about assigning a precise

---

[3]*See* William M. Acker, Jr., *Can the Courts Rescue ERISA?*, 29 Cumb.L.Rev. 285 (1998-1999).

degree of self-interest even to the most subtly conflicted decision-maker.  Perhaps out there somewhere is a fiduciary with only 42 degrees of self-interest on a scale of 100.

If this court correctly understands *Brown*, the Eleventh Circuit was obviating the need to establish a precise degree of deference in cases in which the denial decision was tainted by self-interest, **if the claimant has presented a credible claim**. This is that reverse side of the "reasonableness" coin.  In such cases, the burden shifts against the conflicted decision-maker, no matter what his degree of his self-interest, despite the broad discretion that may have been given him in the plan document. This is what this court said in *Carter*, trying its best to follow the Eleventh Circuit's instruction in *Brown*.  The court sees no more reason to change its mind than to refuse to follow the Eleventh Circuit.  Put another way, when an LTD beneficiary presents evidence from a treating physician upon which it would be just as reasonable to find the claimant disabled as it would be to find him not disabled, he would have met his *prima facie* burden under *Brown*, whereupon the burden would shift to the conflicted decision-maker to prove that his decision was not influenced in the slightest degree by his self-interest, something virtually impossible to do.  Under such circumstances, if the decision-maker fails, he loses.  It is difficult for this court to imagine an ERISA fiduciary both granted full *Bruch*

11

discretion and so disinterested as to have his decisions reviewed under a pure arbitrary and capricious standard, or, as BST in this case contends, under the so-called "modified" or "heightened" arbitrary and capricious standard.  The court rejects BST's "fall-back" contention in his regard.

BST, as plan sponsor, had such a direct and substantial financial interest in the denial of Burroughs's claim as to entitle its decision to no deference whatsoever.  BST has wholly failed to offer any proof that Burroughs's claim was facially frivolous or so spurious as to set up the logical inference that the denial decision was entirely free of taint.  It would have been interesting, if ineffectual, if BST had attempted to offer evidence of the good character and consummate integrity of every person who made a contribution to this denial decision, instead of simply treating Burroughs's claim as totally devoid of colorable merit.  Any judge who had the degree of self-interest that BST has in this case would, without batting an eye, recuse.  But, this is ERISA, in which administrative exhaustion undertaken before a conflicted decision-maker, despite the ofttime futility of that exhausting prerequisite to suit, is the usual rule.

In examining the merits of Burroughs's claim, it quickly appears that she was not complaining of a hangnail or of a case of poison ivy.  She presented substantial and credible medical evidence of a complete inability to work.  Her claim hinged on

professional medical opinion, even though disputed and even though involving competing diagnoses of serious physical and mental conditions. The professional opinions she offered were, in this court's opinion, less likely to be tainted than those supplied by BST. Throughout the claims process, BST and its evaluators treated Burroughs as if she were a malingerer and her doctors were no more than charlatans. BST would perhaps have filed a counterclaim against Burroughs for fraud, except for the opportunity that would have provided for Burroughs to demand a jury trial.

If *Brown* is not read to require BST to prove what it has not proven, namely, that its decision was untainted, the court must discharge its responsibility under the only possible alternate approach to a reading of *Brown*, namely, to examine the competing evidence absolutely *de novo*, without indulging any presumptions whatsoever. If Burroughs does not prevail simply by virtue of her having presented a **reasonable** claim to a **conflicted fiduciary**, the court, under the alternative approach, nevertheless finds, by a sorting and weighing of the evidence, that Burroughs has, on the record, met her burden of proof.

### What Does the Administrative Record Show?

Both Burroughs and BST insist that this case is appropriate for disposition under Rule 56, F.R.Civ.P. The court agrees. If

it believed otherwise, the only recourse would be to deny both motions and to proceed to a trial on the merits, in which the parties would be called upon to offer their competing expert witnesses, the plaintiff would testify, and the court would make credibility determinations, perhaps appoint its own expert, make findings of fact and reach conclusions of law.  From searching the law books, it becomes clear that virtually all judicial decisions in ERISA benefits cases are under Rule 56.  To conduct full-scale trials of ERISA benefits claims would change the ERISA landscape forever, perhaps for the better.  Under Rule 56 analysis, as this court understands *Brown*, the object of the inquiry is first to determine whether the fiduciary has satisfied its burden of proving that it is without self-interest, or that the claim is facially frivolous.  BST failed to meet this burden.

     During her prolonged effort to obtain LTD benefits, Burroughs has been represented by a lawyer who was just as persistent and pugnacious as the clearly adversarial set of BST claims administrators.  Time after time, Burroughs offered ample, credible evidence of her "total disability", as that term is defined in the plan.  There is no reason to recount and to analyze in detail all of that evidence, consistently treated with incredulity by BST.

     The first reason BST gave Burroughs for denying her claim was that "current medical information and information from other

sources did not substantiate total disability". Nothing could have been more nebulous than this retort. Burroughs was not told what the "information from other sources" consisted of. This evasive communication wholly failed to meet the standard of 29 U.S.C. § 1133. That statute provides that a benefits claim cannot be denied without the plan administrator's "setting forth the specific reasons for such denial". As Burroughs's claim progressed in fits and starts, BST, in violation not only of 29 U.S.C. § 1133, but of the lesson in *Levinson v. Reliance Standard Life Insurance Co.*, 245 F.3d 1321 (11th Cir. 2001), disingenuously tried to articulate new and different reasons for its denial. A second reason it gave Burroughs was that she had presented no "objective" evidence of disability. BST did not tell Burroughs, and has not told this court, where in the plan document is any requirement for presenting "objective" evidence, whatever "objective" may mean in this context. Frankly, this court would characterize Burroughs's evidence as more "objective" than BST's responses to it were. BST cannot hold an applicant to a self-created standard of "objectivity" that it cannot meet.

Another alleged reason for BST's denial decision, not articulated by BST until litigation began, was that it had surveilled Burroughs and found her to have engaged in the real estate business, thus proving that she is not disabled. Burroughs had no real estate license. She admits that she did

15

make a try at real estate, but she credibly says that she failed at real estate because of her physical and mental infirmities. BST had reason to find, and therefore did find, that Burroughs's testimony was not credible, and that her medical evidence was equally unbelievable.  BST's in-house medical evidence was, of course, credible in the eyes of the one paying for it.  The BST correspondence, external and internal, reveals inquisitorial skepticism of the "cost containment" variety.  All of the participants in the denial decision were so self-interested as to call into question, if not to annihilate, their expressions of opinion.  Under ERISA, the ethics of the benefits decision-maker do not require recusal when the decision-maker is self-interested, but *Brown* recognizes that a self-interested claims administrator runs the risk of automatic reversal if his self-interest is detected by the reviewing court.

Not only did the surveilling of Burroughs reflect the lengths to which BST went to justify its denial of Burroughs's claim, but the whole record reflects that the claims evaluators conceived their role as defenders of BST.  They didn't have an independent bone in their bodies.  They were never expected to assume, and never did assume, the role of fair and open-minded claims administrators.  To do so was intrinsically impossible for them.  When BST discounted the opinions of Burroughs's medical experts, finding them unreliable, and instead relied on the

16

opinions of its own physicians, who never treated Burroughs, BST cannot expect a favorable response to its demand that this court review its decision under a heightened arbitrary and capricious standard. Even under such a standard, Burroughs would have a meritorious case.

Burroughs was awarded Social Security disability benefits for the same infirmities she complained of to BST. Although this fact is, of course, not dispositive of her ERISA claim, the Social Security finding so well describes Burroughs's actual medical conditions, as proven by the medical evidence she offered, that the court now employs it as the court's finding of ultimate fact:

> [S]evere impairments, i.e., severe incapacitating and multiple medical problems including a history of mitral valve prolapse, galactorrhea, elevated prolactin, severe gastroparesis, empty sella syndrome, colon spasms, pseudomembranous colitis, extreme depression and phobias, and continuing morbid obesity. Additionally, the claimant is status post two concussions from falls at her home with resultant daily bitemporal throbbing headaches with nausea, dizziness, tinnitus, vertigo and short term memory difficulty.
>
> ...[C]laimant has a mental impairment which has resulted in a marked restriction of activities of daily living, marked difficulty in maintaining social functioning, and is characterized by a pervasive loss of interest in almost all activities, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty in concentrating.

From the voluminous evidence available to this court, the court finds no reason to disagree with this Social Security finding.

Only BST's self-interest can explain BST's disagreement with it.

### Conclusion

When a conflicted ERISA fiduciary is given *Bruch* discretion, his decision receives only the deference it deserves. Whichever of *Brown*'s two possible approaches to resolving the problem created by *Bruch* (and this court has stated its preference), the scales tilt farther against this particular conflicted decision-maker than the Fifth Circuit recently tilted them in *Robinson v. Aetna Life Insurance Co.*, 443 F.3d 389 (5th Cir. 2006), in which that court used the sliding scale of deference, but so weighted against the conflicted decision-maker as to force the conclusion that its termination of disability benefits was "wrong". BST was just as "wrong" in this case as the claims administrator was in *Robinson*, whether BST's decision is examined on a perfectly clean slate, or directed by the fact that Burroughs's proof of disability was ample and credible, so that BST's taint, existing as a matter of fact and law, was tantamount to a confession of Burroughs's claim. Under either approach, Burroughs is entitled to her LTD benefits.

An appropriate separate order will be entered.

DONE this 14th day of June, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE