FILED
2006 Jul-21 PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                     MIDDLE DIVISION

DELORIS BURROUGHS,            }
                              }
     Plaintiff,               }
                              }     CIVIL ACTION NO.
v.                            }     01-AR-1863-M
                              }
BELLSOUTH TELECOMMUNICATIONS, }
INC., et al.,                 }
                              }
     Defendants.              }
```

**<u>MEMORANDUM OPINION</u>**

This case was brought five years ago by Deloris Burroughs ("Burroughs") against her former employer, BellSouth Telecommunications, Inc. ("BST"), and another defendant called "Long Term Disability Plan for Salaried Employees", which, in function, was nothing but BST, the plan sponsor by another name. Burroughs invoked 29 U.S.C. § 1132, the enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), and claimed that she had been wrongfully denied long-term disability ("LTD") benefits.

At a much earlier juncture in the case, the undersigned, to whom the case was at that time randomly reassigned from the magistrate judge to whom the case was originally assigned, considered the then report and recommendation of the magistrate judge on the then pending cross-motions for summary judgment, and withheld a dispositive ruling.  Instead, the court ordered the claim remanded or resubmitted, not to the magistrate judge, but

to BST for its reconsideration in light of evidence not in the administrative record, some of which had been lost and was not considered either by BST or by the magistrate judge.  After a prolonged reconsideration, BST, speaking through a new "claims administrator", Broadspire, Inc. ("Broadspire"), instead of through BellSouth Telecommunications Employees Benefit Claim Committee ("EBCRC"), BST's earlier *alter ego* that had first denied Burroughs's LTD benefits claim, again denied it.

After considering renewed cross-motions for summary judgment supported by boxes of evidentiary materials and briefs, the magistrate judge, to whom the parties did not concede full jurisdiction, has recommended the denial of Burroughs's motion for summary judgment and the granting of BST's motion.  Neither Broadspire nor EBCRC is, or ever has been, a defendant.  BST has never contended that either of these entities is a necessary party, thus conceding that BST is the only party legally responsible to LTD beneficiaries for making decisions under its LTD plan, and therefore that both EBCRC and Broadspire were nothing more than the authorized agents of BST.  This is equally true of BST's only named co-defendant, Long Term Disability Plan for Salaried Employees, which, assuming that it is a juridical entity, has rightly been ignored.

Burroughs timely objected to the report and recommendation, automatically forcing upon this court under Rule 72, F.R.Civ.P.,

the absolute obligation to evaluate the parties' cross-motions anew, as if they had never been considered by the magistrate judge.

Burroughs was awarded Social Security disability benefits for the same infirmities she complained of to BST. Although this fact is, of course, not dispositive of her ERISA claim, the Social Security finding so well describes Burroughs's actual medical conditions, as proven by her medical evidence, that the court hereby adopts it as its findings of ultimate, pertinent fact:

> [S]evere impairments, i.e., severe incapacitating and multiple medical problems including a history of mitral valve prolapse, galactorrhea, elevated prolactin, severe gastroparesis, empty sella syndrome, colon spasms, pseudomembranous colitis, extreme depression and phobias, and continuing morbid obesity. Additionally, the claimant is status post two concussions from falls at her home with resultant daily bitemporal throbbing headaches with nausea, dizziness, tinnitus, vertigo and short term memory difficulty.
>
> ...[C]laimant has a mental impairment which has resulted in a marked restriction of activities of daily living, marked difficulty in maintaining social functioning, and is characterized by a pervasive loss of interest in almost all activities, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty in concentrating.

From the voluminous evidence available to this court, the court finds no reason to quarrel, as BST does, with this Social Security finding.

**Standard of Review**

It does not follow from the fact that the standard of review of the magistrate judge's proposed ruling is *de novo* that the standard of review of BST's denial of benefits is *de novo*. Assuming *arguendo* that Burroughs's claim is here to be evaluated *de novo*, with the court being called upon to understand the terms of the LTD plan and to weigh the competing medical evidence bearing on Burroughs's alleged disability, and further assuming *arguendo* that the burden of proof is on Burroughs, this court would conclude, contrary to the conclusion proposed by the magistrate judge, that Burroughs is entitled to LTD benefits. The court finds that Burroughs is disabled within the meaning of the term "disability" in the plan, no matter what standard of review is employed, short of "arbitrary and capricious", but the court just as quickly expresses doubt that Burroughs's claim is to be examined exactly *de novo*, as the term "*de novo*" is ordinarily understood.

The nuances of judicial review of ERISA decisions are myriad. The approach to such judicial review is still evolving, often in different directions. To start with, it is undeniable that BST has given itself the broadest possible grant of ERISA discretion, taking the fullest advantage of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989). The language used by BST to give itself *Bruch* discretion is as air-

tight as a draftsman could make it.

In *Bruch* the Supreme Court established the still controversial idea that an ERISA plan document can give an ERISA fiduciary virtually unlimited discretion both to interpret the plan and to rule on the merits of a particular claim, and thereby to render the fiduciary's decision invulnerable to judicial alteration **unless** the reviewing court finds that the fiduciary abused his discretion, or, in other words that the denial decision had no basis in reason.  Although, in theory, the plan document is thought of as a contract between the employer (the plan sponsor) and the employee (the plan participant or beneficiary), it never is truly the product of arms-length negotiation between what, to use terms from the law of trusts, are the settlor and the *cestui que trust*.  The employee plays no part in fashioning the coverage or the claims procedure.  Yet, he is deemed to have granted to his ERISA fiduciary the right to be less than loyal to him.  In actuality, the funding party, whether an insurance company or a self-insured employer, is always self-interested.  That self-interest is invariably adopted by the agents and claims administrators of the sponsor.  Understandably, their loyalty is to the party who pays them.

When the ominous words "cost containment" were first

revealed as watchwords during the *UNUM/Provident* scandal[1], the search was on for an ERISA decision-maker who could pass muster as non-conflicted and had no reason to deny a claim in order to "contain costs". If any such an entity has been found, its name has not been made public. Implicitly recognizing this problem, Judge Posner, even before *Bruch*, set up a sliding scale of deference to be accorded a decision-maker given *Bruch* discretion, but who has a conflict-of-interest. *See Van Baxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052 (7th Cir. 1987). This innovation, implicit in *Bruch*, includes the idea that the degree of deference slides with the degree of the decision-maker's self-interest. In other words, a decision by that hard-to-imagine, wholly-impartial, fair-minded, disinterested, objective decision-maker, can be set aside by a court only if the decision was "arbitrary and capricious", whereas the decision of the conflicted decision-maker is given **whatever deference it deserves**. Two questions come to mind. First, who decides what deference, if any, BST's denial decision deserves? Second, if the answer to the first question is "this court", what degree of deference does this court find that BST's decision deserves?

In *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991),

---

[1] The *UNUM/Provident* scandal is insightfully described and explained in John H. Langbein, et al., *Pension and Employee Benefit Law* 669-74 (4th ed. 2006).

the Eleventh Circuit parted ways with those courts who, after *Bruch*, began routinely to affirm benefits denials by plan fiduciaries who had been granted *Bruch* discretion, no matter how conflicted the fiduciaries might be.  Many courts simply turned a blind eye to obviously self-interested decision-making.  One such escape from reality is provided by simply finding that the denial was not really the decision of the self-interested plan sponsor but was the decision of an "independent", or "outside" plan administrator.  Like many other ERISA plan sponsors, BST in the past has interposed this as the primary defense to ERISA benefits claims.  *See Carter v. BellSouth Telecommunications, Inc.*, 345 F. Supp. 2d 1296 (N.D. Ala. 2004).

In *Brown*, the Eleventh Circuit not only acknowledged the sliding scale of deference, but expanded the idea by holding that even though a denial decision may have been within the range of "reasonableness", "**[t]he [conflicted] fiduciary . . . should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment**".  (emphasis supplied).  898 F.2d at 1568.  This breakthrough proposition remains the law of the Eleventh Circuit.  No subsequent Eleventh Circuit opinion has repudiated it or subtracted from it.  This court is bound by what the Eleventh Circuit said in *Brown* and is obligated to give it meaning and purpose.  To give the emphasized language from *Brown* real meaning and purpose the court must decide if BST's decision

here was tainted by self-interest; and, if it was, to decide what deference, if any, to give it.  This involves an evaluation of the **reasonableness not only of BST's denial, but the reasonableness of Burroughs's claim in the first place**.  *Brown* created the reverse side of the "is it reasonable?" coin in instances where the decision of the claims administrator is tainted.  This court finds no other explanation for what the Eleventh Circuit pointedly said in *Brown*.

Examining the record created during the agonizing process by which Burroughs pursued her claim within the BST chain-of-command, this court finds no evidence upon which BST could seriously argue that it has proven by a preponderance of the evidence that its denial decision was not tainted by self-interest.  This court cannot even detect this argument from BST, whereas it was BST's main line of defense in *Carter*.  The possibility that BST, through its agents, honestly believes that Burroughs can perform adequately in a workplace setting has received this court's careful consideration.  If BST holds such a belief, it is deluding itself.  The court is not deluded.  Nevertheless, the court concedes *arguendo* that BST produced an elementary evidentiary basis for denying the claim.  It would enjoy the *Bruch* presumption if there had been no conflict-of-interest.

In *Brown*, the Eleventh Circuit was doing nothing but

accommodating to reality.  It was recognizing the obvious, namely, that in the **real world** of ERISA decision-making, the deciders are virtually **always** affected by self-interest, and that their decisions are presumptively tainted.  Some decision-makers are more obvious than others in revealing their bias.  In this case, BST and its various *alter egos* have demonstrated an aggressiveness that compares favorably with the "cost containment" attitude demonstrated during the *UNUM/Provident* episode.  As already stated, BST does not here pretend, as it did in *Carter*, that it has no financial stake in the denial of Burroughs's claim.  Because it cannot mount a defense based on an absence of self-interest, and because it is at the outer edge of conflicted decision-makers, there was no need in this case to allow Burroughs to engage in discovery designed to explore the **degree** of BST's self-interest, as the court permitted in *Harris v. J.B. Hunt Transport, Inc.*, 423 F. Supp. 2d 595 (E.D. Tex. 2005).  BST's degree of self-interest was total.

What this court said in *Carter*, in combination with what the court is here saying, may erroneously lead the reader to believe that this court is more judgmental of BST than it is of other ERISA plan sponsors who operate under the same or similar circumstances.  Although this court's opinion in *Carter* was vacated on the joint motion of the parties as part of a settlement reached during the pendency of BST's appeal, this

9

court does not retreat from its holding in *Carter*, which was that no matter what entities in addition to BST contributed to BST's denial decision and were interposed by BST as insulators, BST was **the actual decision-maker** and was operating under a conflict-of-interest.  In *Carter*, the court was not taking aim just at BST.  Neither is this court now taking aim at BST.  This court is an equal opportunity critic of ERISA decision-making.[2]  This court cannot, however, resist suggesting the possibility that BST settled with Ms. Carter in order to wipe out this court's opinion in *Carter* and to avoid the possibility that the Eleventh Circuit might agree with it.

If the **degree** of deference to be accorded BST's decision is a matter that must be determined under the *Bruch* rubric, there is nobody but this court to do it.  The court has looked for opinions by other courts to see if any court has actually fixed a numerical degree of deference to be given a conflicted fiduciary (such as 50 on a scale of 100), but has found none.  BST's conflict-of-interest was and is so glaring that it pervaded and corrupted its decision.

In *Brown* the Eleventh Circuit was obviating the need to establish a precise degree of deference in cases in which the denial decision was tainted by self-interest, that is, **if the**

---

[2]*See* William M. Acker, Jr., *Can the Courts Rescue ERISA?*, 29 Cumb.L.Rev. 285 (1998-1999).

**claimant has presented a credible claim**.  This is the reverse side of the "reasonableness" coin.  In such cases, the burden shifts against the conflicted decision-maker, no matter what the **degree** of his self-interest, and no matter how broad is the discretion given him in the plan document.  This is the substance of what this court was saying in *Carter* as it attempted to follow the Eleventh Circuit in *Brown*.  The court sees no reason to change its mind about what it said in *Carter* or to refuse to follow what the Eleventh Circuit said in *Brown*.

Put another way, when an LTD claimant presents evidence from his treating physician, upon which it would be reasonable to find the claimant disabled even though under the fiduciary's reasoning it would be reasonable to find him not disabled, the claimant would have met his *prima facie* burden under *Brown*, whereupon the burden would shift to the conflicted decision-maker to prove that his decision was not, in fact, influenced by his self-interest.  Under such circumstances, if the decision-maker fails to meet his burden, he loses.  It is difficult for this court to imagine an ERISA fiduciary granted full *Bruch* discretion and so disinterested as to have his decisions reviewed under the pure "arbitrary and capricious" standard, or, as BST in this case contends, under the so-called "modified" or "heightened" arbitrary and capricious standard.  BST, as plan sponsor, had such a direct and substantial financial interest in the denial of

11

Burroughs's claim that its decision is entitled to no deference; and BST has failed to offer any proof that Burroughs's claim was frivolous or was so lacking in merit on the evidence as to allow the logical inference that the denial decision was not affected by the decider's self-interest.

Burroughs is not complaining of a hangnail or of a case of poison ivy.  She presented substantial and credible medical evidence of a complete inability to perform meaningful work.  Her claims of serious physical and mental conditions hinged on professional medical opinion, even though disputed by BST's evidence.  The professional opinions she offered were, in this court's opinion, less likely to be tainted by self-interest than those proffered by BST.  Throughout the claims process, BST and its evaluators treated Burroughs as if she were a malingerer and as if her doctors were her co-conspirators.  BST's attitude of hostility was as palpable as the court has ever detected without seeing facial expressions or hearing voice inflections.

If *Brown* is not read to require that BST prove, as an avenue of escape, what it has not proven, namely, that its decision was untainted, or, as another avenue, that Burroughs's claim is unreasonable, the court must discharge its responsibility under the only other possible approach, namely, to examine the competing evidence absolutely *de novo*, without indulging any presumptions or granting any deferences whatsoever.  If Burroughs

12

does not prevail by virtue of her having presented a **reasonable** claim to a **conflicted fiduciary**, this court, nevertheless finds, by sorting and weighing the evidence, that Burroughs has, on this record, met her burden of proving, by a preponderance of the evidence, a permanent disability entitling her to LTD benefits.

### What Does the Administrative Record Show?

Both Burroughs and BST insist that this case is appropriate for disposition under Rule 56, F.R.Civ.P.  The court agrees.  If it believed otherwise, the only recourse would be to deny both Rule 56 motions and to proceed to a trial on the merits, during which the parties would be called upon to offer their competing expert witnesses, the plaintiff herself would testify, and the court would make credibility determinations, perhaps appoint its own expert, make findings of fact and reach conclusions of law.  The five years this case has consumed would drastically increase.  From searching the law books, it becomes clear that virtually all judicial decisions on ERISA benefits are made under Rule 56.  To conduct full-scale trials of ERISA benefits claims, as a regular routine, would change the ERISA litigation landscape forever.

During her prolonged effort to obtain LTD benefits, Burroughs has been represented by a lawyer just as persistent as were the clearly adversarial set of BST claims administrators.  Time after time, Burroughs offered BST ample, credible evidence

of her "disability", as that term is defined in the plan.  There is no reason to recount here, or to analyze in detail, all of that evidence, which was consistently treated by BST with incredulity.  A few comments on that evidentiary record must suffice.

The first reason BST gave Burroughs for denying her claim was that "current medical information and information from other sources did not substantiate total disability".  Nothing could have been more nebulous than this retort.  Burroughs was not told what the "information from other sources" consisted of.  This evasive communication wholly failed to meet the standard of 29 U.S.C. § 1133, which precludes the denial of a benefits claim without the plan administrator's "setting forth the specific reasons for such denial".

As Burroughs's claim progressed in fits and starts, BST, in violation of what the Eleventh Circuit held in *Levinson v. Reliance Standard Life Insurance Co.*, 245 F.3d 1321 (11th Cir. 2001), disingenuously tried to articulate a new and different reason for its denial.  The second reason it gave was that Burroughs had not presented any "objective" evidence of disability.  BST did not tell Burroughs, and has not told this court, where in the plan document there is any requirement for presenting "objective" evidence, whatever "objective" may mean in this context.  The plan contains no such requirement.  Frankly,

14

this court would characterize Burroughs's evidence as more "objective" than BST's responses to it.  BST cannot hold an applicant to a self-created standard of "objectivity" that it cannot meet itself.

A third alleged reason for BST's denial decision, not articulated by BST until litigation began, was that it had surveilled Burroughs and found her to have engaged in the real estate business, thus proving that she is not disabled.  Burroughs had no real estate license.  She admits that she did make a try at selling real estate, but she credibly says that she failed because of her physical and mental infirmities.  BST had a compulsive incentive to find, and therefore did find, that Burroughs's claim of disability was due to be denied because her medical evidence was unbelievable.  BST's in-house medical evidence was, of course, credible in the eyes of the one paying for it.  The BST correspondence, external and internal, reveals inquisitorial skepticism of the "cost containment" variety reflected in *UNUM/Provident*.  All of the participants in the denial decision in this case were so self-interested as to call into question, if not to annihilate, their expressions of opinion.

ERISA does not require decision-makers to recuse themselves when they are self-interested, **because they are all self-interested**, but *Brown* recognized that the decision of a self-

interested claims administrator who denies a claim will be set aside by a reviewing court unless the court can find that the beneficiary's claim was clearly without merit.  This court can make no such finding.

## The Relief

At the request of the court, and without defendants' waiving their defenses on the liability issue, the parties have stipulated that the amount of unpaid disability benefits accruing during the relevant time period is $125,093.76.  This figure is based on a monthly disability benefit of $947.68, beginning July, 1995, and continuing through June, 2006 (132 months).  The parties are, however, in sharp disagreement on the trailing issue, namely, what prejudgment interest, if any, should be added to the benefits after they became due.

BST contends that, as a matter of law, ERISA does not allow a plan beneficiary to recover prejudgment interest, no matter how unjustified the nonpayment of benefits may have been.  Not just to be consistent with what this court said in *Oliver v. The Coca-Cola Co.*, 397 F. Supp. 2d 1327 (N.D. Ala. 2005), but because to do otherwise would be to encourage the very behavior this court has criticized and that a growing number of other courts also criticize, this court exercises its discretion and imposes interest upon BST.  But, at what rate?

BST argues that if the court insists on refusing to agree with its understanding of *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002), the interest rate on an ERISA claim should be a "federal" rate of 5.27% per annum. Burroughs, on the other hand, argues that the rate should be 18%, borrowed from Ala. Code (1975) § 27-1-1(c), the statute that this court employed in *Florence Nightingale Nursing Serv. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476 (11th Cir. 1995), which involved a claim for unpaid **medical** benefits and not **disability** benefits. This was the academic distinction this court discussed in *Oliver v. Coca-Cola*, in which the court searched for the most nearly analogous interest rate under **state** law, and found that the law of Georgia and not the law of Alabama controlled. In the instant case, the search for the most nearly analogous prejudgment interest rate is limited to Alabama. The court concludes that the proper rate is the traditional, tried-and-true 6% per annum that applies to all sums due under a contract where there is no rate fixed by the contract itself. *See* Ala. Code (1975) §§ 8-8-1, 8-8-8. In *Florence Nightingale*, the court used the 18% rate because that case involved **medical** benefits of the kind described in § 27-1-1(c). From the language of § 27-1-17(c), and the high rate of interest in it, it is clear that the statute was designed to have a deterrent effect on insurers that do not honor their medical benefits policies. In the instant

case, to use the 18% rate would be to punish BST rather than to compensate Burroughs for the loss of the use of money that BST wrongfully withheld.  If this court could legislate an interest rate to use under the current circumstances, it might settle on something between 6% and 18%, but as between the only two possible Alabama rates, the court chooses Alabama's regular 6%.

Interest at 6% on each of the 132 installments of $947.68 as it became due equals $41,593.68, which, when added to the past-due benefits of $125,093.76, equals $166,687.44, for which amount judgment will be entered.

### Conclusion

When a conflicted ERISA fiduciary is given *Bruch* discretion, his decision receives only the deference it deserves.  Whether this approach resolves the problem inherent in *Bruch*, or the court should take some other approach, the scales tilt farther against this particular conflicted decision-maker than the Fifth Circuit recently tilted the scales in *Robinson v. Aetna Life Insurance Co.*, 443 F.3d 389 (5th Cir. 2006), in which that court used the sliding scale of deference, but so weighted it against the conflicted decision-maker as to force the conclusion that the termination of benefits was "wrong".  BST was just as "wrong" in this case as the claims administrator was in *Robinson*, whether BST's decision is examined on a perfectly clean slate, or is

overwhelmed by the fact that Burroughs's proof of disability was ample and credible, so that BST's taint, existing as a matter of fact and law, was tantamount to a confession of Burroughs's claim.  Under either approach, or under any other approach except the pure "arbitrary and capricious" approach, Burroughs is entitled to her LTD benefits.  In the final analysis, only BST's self-interest can explain its disagreement with the Social Security administrator's finding.

    An appropriate separate final judgment will be entered.

    DONE this 21st day of July, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE